UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LENDR FINANCE, LLC,

        Plaintiff,

    v.

MEDEFIS, INC.,

        Defendant.

No. 24 CV 2061

Judge Manish S. Shah

## ORDER

Defendant's motion to dismiss, [12], is denied. Defendant shall file its answer to the complaint by August 28, 2024, and the parties shall file a joint initial status report with a proposed case schedule by September 3, 2024.

## STATEMENT

Plaintiff Lendr Finance, LLC is a company that purchases "accounts," or "rights to payment" from other companies; these accounts are often reflected in invoices. [1-1] ¶ 6, 6 n.1.[1] Lendr's business is referred to as "factoring" and Lendr is the "Assignee" or "Purchaser" of the accounts. [1-1] ¶ 7. Lendr entered into an agreement with Agape Nursehealthcare LLC to purchase "all of Agape's rights, titles, and interests in and to all present and future accounts ("Accounts"), which are payable to Agape from its Customers." [1-1] ¶ 8.

Agape provides healthcare staff to various hospitals and facilities; it contracted with defendant Medefis, Inc. to use Medefis's technology portal to find positions for its staff. [1-1] ¶¶ 9–12. Agape provided the staff and submitted timesheets for payment through Medefis's portal. [1-1] ¶ 13. The contract between Agape and Medefis stated that Medefis was responsible for paying the timesheets submitted by Agape through the Medefis portal. [1-1] ¶ 14.

Lendr purchased and was assigned the right to payment on Accounts from Agape for services rendered by Agape for the benefit of Medefis. [1-1] ¶ 16. Lendr issued a Notice of Assignment to Medefis informing Medefis that it should remit payments on the Accounts to Lendr; the notice was received and acknowledged by Medefis. [1-1] ¶¶ 18–21. These Accounts are due and owing and unpaid. [1-1] ¶¶ 25,

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed on the top of the filing.

31. Lendr filed suit for breach of contract against Medefis for its failure to pay the Accounts. In response, Medefis filed a motion to dismiss arguing that: (1) Lendr failed to properly allege that it has the right to collect the Accounts from Medefis; (2) any assignment from Agape to Lendr is barred by an anti-assignment provision; and (3) Lendr has failed to state a claim for breach of contract. [12].

## I.  Choice of Law

Federal courts sitting in diversity apply the choice of law rules of the forum state.[2] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Illinois courts typically heed the choice of law provision of the contract in question "unless the parties' choice of law would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state." *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015); *see also Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 529 (1975) ("Generally, the law applicable to a contract is that which the parties intended … When that intent is expressed, it should be followed.").

The contract between Medefis and Agape states that Nebraska law "will govern the validity and interpretation" of the terms and provisions of the contract. [1-1] at 20 (§ 22). Lendr does not dispute that the choice of law provision exists or that it should control and notes that the parties' relationship is defined by the UCC, which may reduce any distinction between state law. *See* [21] at 3. I apply Nebraska law.

## II.  Motion to Dismiss

Medefis characterizes its motion as a challenge based on "prudential limitations on standing." *See* [12] at 4.[3] One of those limitations is the requirement that "plaintiffs must assert their own legal rights and interests and cannot rest their claim to relief on the legal rights of a third party." *G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). Federal Rule of Civil Procedure 17(a) codifies a similar requirement, "that every action must be prosecuted in the name of the real party in interest." *G&S Holdings LLC*, 697 F.3d at 540–41. Because neither of these issues implicate the court's power to hear the case, i.e., the court's jurisdiction, I review both under a Rule 12(b)(6) standard. *See Rawoof v. Texor*

---

[2] Diversity jurisdiction is appropriate because the amount in controversy is greater than $75,000.00, plaintiff is a citizen of Illinois, and defendant is a citizen of Delaware and Texas. *See* [1] at 2–3 (AIC), [1] at 3–4 (citizenship of defendant), [1] at 4–5 *and* [1-3] at 1 (citizenship of plaintiff).

[3] Plaintiff adequately alleged Article III standing—it has an injury-in-fact (the fact that it paid for the right to collect on the Accounts and has not been paid on the Accounts), the injury is fairly traceable to defendant's alleged failure to pay on the Accounts, and it can be redressed by a damages award. *See Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 501 (7th Cir. 2024) (identifying requirements of Article III standing).

2

*Petroleum Co., Inc.*, 521 F.3d 750, 756–57 (7th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion to dismiss takes as "true the complaint's well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor." *Approved Mortgage Corp. v. Truist Bank*, 106 F.4th 582, 588 (7th Cir. 2024).

### a. Prudential Limitations on Standing

The complaint adequately alleges that Lendr is pursuing its own right to collect on open invoices as the assignee of "accounts." Lendr begins its complaint by referencing the Uniform Commercial Code's definition of "accounts" as "a right to payment of a monetary obligation … for services rendered or to be rendered." [1-1] ¶ 6 n.1.[4] Lendr alleged that "accounts are often reflected in invoices." [1-1] ¶ 6. Lendr entered into a "Factoring Agreement" to purchase "All of Agape's rights, titles, and interest in and to all present and future accounts ("Accounts"), which are payable to Agape from its Customers." [1-1] ¶ 8. Agape "offered to sell and assign to Lendr all of Agape's Accounts [that were] due and owing for services rendered by Medefis" and "Lendr accepted and proceeded to purchase and was assigned Accounts from Agape for services rendered by Agape for the benefit of Medefis." [1-1] ¶¶ 15–16; *see also* [1-1] ¶ 22 ("Agape offered for sale and Lendr purchased, among others, fifteen (15) Accounts for services rendered by Agape to Hospital Clients for which Medefis accepted and agreed to be responsible for payment[.]"). These allegations are sufficient at the pleading stage to show that Lendr has purchased the right to payment (i.e., "accounts") on invoices that were due and owing from Medefis to Agape.

Lendr is sufficiently precise about what it purchased—the right to collect on invoices due and owing from Medefis to Agape. *Cf. MAO-MSO Recovery II, LLC v. Allstate Insurance Co.*, Nos. 17-cv-1340, 17-cv-2370, 2018 WL 1565583 at *4 (N.D. Ill. March 30, 2018) (conclusory allegations that unnamed account owners "assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff" were insufficient to allege that plaintiffs had the right to collect on unpaid debts). Because the Accounts were transferred directly from Agape (the original creditor or "assignor") to Lendr, there is no concern about an inadequately alleged or explained chain of title to the Accounts. *Cf. Llano Financing Group, LLC v. Lendzion*, No. 15-cv-7091, 2016 WL 930660, at **1, 4–5 (complaint insufficient where it only alleged that original lender authorized a third party to "assign certain servicing functions and other duties …. including any and all legal rights" to a fourth party and that the fourth party "delegated and assigned its duties, authority and legal rights to pursue these tort claims" to plaintiff). Finally, although Medefis makes arguments about third-party beneficiaries, nothing in the complaint suggests that Lendr is suing as a third-party beneficiary to the contract between Agape and Medefis. To succeed on its claim, Lendr must prove that it purchased the right to payment on the invoices

---

[4] Nebraska has adopted Article 9 of the UCC, so Nebraska law recognizes Lendr's rights as an assignee of accounts. *See* Neb. Rev. St. U.C.C. §§ 9-101, 9-401–409.

from Agape to Medefis, but the complaint adequately alleges that Lendr is suing to vindicate its own right, as assignee, to payment on the Accounts.

Medefis also argues that assignment of Accounts from Agape to Lendr is prohibited by the anti-assignment provision in the contract between Agape and Medefis. *See* [12] at 6–8. But Section 9-406 of the Uniform Commercial Code invalidates prohibitions of assignment of accounts (and chattel paper or payment intangible) in the contract between an account debtor and an assignor. *See* Neb. Rev. St. U.C.C. § 9-406(d)(1). The Nebraska Supreme Court has applied the previous version of this statutory provision to invalidate an anti-assignment provision in the contract between an assignor and an account debtor. *See Home Fed. Sav. & Loan Ass'n of Grand Island v. McDermott & Miller*, 234 Neb. 11, 16–17 (1989) (applying Neb. U.C.C. § 9-318(4) to negate an anti-assignment provision in underlying contract). All of the cases that Medefis cites to support its assertion that Nebraska will enforce anti-assignment provisions occurred outside of the Article 9 context, so they are not applicable to the present question. *See City of Omaha v. Standard Oil Co.*, 55 Neb. 337, 338–41 (1898) (while right to receive payment for services rendered is generally assignable, anti-assignment provision in contract between municipality should be upheld because of public policy to ensure municipality receives necessary oil); *Murphy v. Plattmouth*, 78 Neb. 163, 166 (Neb. 1907) (upholding anti-assignment provision in construction contract with municipality); *Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebraska*, 219 Neb. 199, 206–207 (Neb. 1985) (upholding anti-assignment provision in health insurance contract because of important public policy of keeping health costs low advanced by the anti-assignment provision). Section 9-406(d)(1) of the UCC, as adopted and enforced by Nebraska, renders the anti-assignment provision in Agape and Medefis's contract unenforceable.

Medefis argues that the notification of assignment sent by Lendr is somehow insufficient but does not actually rely on the UCC's statutory requirements for the notification of rights. *See* [12] at 6. Section 9-406 requires a notification of assignment to "reasonably identify the rights assigned and demand payment to the assignee." *First State Bank Nebraska v. MP Nexlevel, LLC*, 307 Neb. 198, 215 (2020); *see also* Neb. Rev. St. U.C.C. § 9-406(a) (notification must be signed by assignor or assignee). The notification of assignment from Lendr to Medefis attached to the complaint seems to meet those requirements. *See* [1-1] at 26–27 (notification that Agape has assigned "their present and future accounts to Lendr," instruction to Medefis to make payments on current or future accounts or general intangibles to Agape f/b/o Lendr at a specific mailing address or enclosed wire information; notification signed by Lendr). Medefis cites *Lake City Bank v. R.T. Milord Co.*, No. 18-cv-7159, 2019 WL 1897068 (N.D. Ill. April 29, 2019), to create a list of requirements for the notification of assignment, but those requirements are not in the statute.[5]

---

[5] Furthermore, I don't read *Lake City* to require that the specific invoice numbers, dates, or

4

Much of this analysis applies to whether Lendr is the real party in interest in this case, as required by Federal Rule of Civil Procedure 17(a). An additional consideration in analyzing a Rule 17(a) motion is whether the defendant could be sued "by the party actually entitled to recover[.]" Fed. R. Civ. P. 17(a) advisory committee's note to 1966 amendment; *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). Because Lendr has adequately alleged that it is an assignee and that Medefis is an account debtor, any concern about double liability is addressed by Section 9-406(a): "After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." Neb. Rev. St. U.C.C. § 9-406(a); *see also First State Bank Nebraska*, 307 Neb. at 209–10 ("once an account debtor receives notification of a transfer … § 9-406(a) mandates that an account debtor must comply and *may only* discharge their account obligations by paying the 'assignee.'") (emphasis added). Medefis has not articulated why this provision would not protect it from suit by Agape.[6]

Lendr's complaint adequately alleges that it has been assigned the right to payment on invoices that are due and owing from Medefis to Agape and Lendr has adequately alleged that it is pursuing its own legal rights in this case. Medefis's motion to dismiss for lack of standing is denied.

### b.    Failure to State a Claim

A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and determines whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court will ignore allegations that simply re-state legal conclusions if there are no factual allegations to support those conclusions. *See Iqbal*, 556 U.S. at 678.

A breach of contract claim in Nebraska requires a plaintiff to "plead and prove the existence of a promise, its breach, damage, and compliance with any condition precedent that activates the defendant's duty." *Phipps v. Skyview Farms*, 259 Neb. 492, 498 (2000). The complaint alleges that Medefis and Agape entered into a

---

amounts of invoices be included in the notification of assignment or that the assignment of accounts be attached to the notification. *See id.*, 2019 WL 1897068 at **4–6 (fact that invoice numbers were included in the notification helped to clarify what rights were transferred, especially when the name of the assignor was incorrect; no mention of whether assignment of accounts was attached or not to the notification).

[6] Medefis mentions that Lendr filed suit against Agape in Cook County Circuit Court for breach of contract, Case No. 2024-L-001717, but does not articulate why that lawsuit means that Lendr has failed to state a claim against Medefis. *See* [12] at 10. The consequences of any admissions by Lendr in that suit or any recovery by Lendr against Agape are for another day.

contract, that Agape provided the services contemplated by the contract, and that Medefis breached the contract by failing to pay for the services. [1-1] ¶¶ 29–31. Lendr alleges that "Medefis materially breached the contract by failing to pay the Outstanding and Unpaid Accounts when due … to Lendr in accordance with the Notice of Assignment" and Lendr suffered damages as a result of those breaches. [1-1] ¶¶ 35–36.[7] The Nebraska Supreme Court, analyzing a commercial relationship governed by Article 9, recognized that an assignee may "step into [the assignor]'s place to enforce [account debtor]'s contractual obligations." *First State Bank Nebraska*, 307 Neb. at 219 (noting that assignee was bringing breach of contract claim against account debtor). Lendr has adequately alleged a claim for breach of contract because, as assignee, Lendr can stand in the shoes of Agape to enforce its rights to payment under the contract.

Finally, Medefis argues that because Lendr alleges that Agape and Lendr entered into a factoring agreement around the same time that Agape and Medefis entered into their contract, Agape could not have assigned its "legal claim" to Lendr. *See* [12] at 10. I disagree. The complaint alleges that on April 4, 2022, Agape and Lendr entered into a general "Factoring Agreement" under which Agape agreed to sell accounts to Lendr. [1-1] ¶ 8. Separately, although the date is not specified, Lendr alleges that "Agape offered for sale and Lendr purchased, among others, fifteen Accounts for services rendered by Agape to Hospital Clients for which Medefis accepted and agreed to be responsible for payment" and that those Accounts are reflected by the invoices attached as Exhibit C to the complaint. [1-1] ¶ 22 (referencing [1-1] at 30–44). Finally, the notification of assignment, which is the document that makes Medefis liable to Lendr, is dated August 15, 2022, which is after Medefis and Agape allegedly contracted with one another. [1-1] at 26. The allegations suffice to show that Medefis promised to pay Agape for services rendered, it failed to make those payments, and that Lendr, as assignee of the right to payment on services rendered, can sue to collect the payments. Medefis's motion to dismiss for failure to state a claim is denied.

ENTER:

Date:  August 7, 2024

Manish S. Shah
U.S. District Judge

---

[7] Lendr also alleges that it has met the conditions precedent to collect as assignee by sending the notification of assignment. *See* [1-1] ¶¶ 18–21, 23–24.