UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LENDR FINANCE, LLC,
an Illinois limited liability company,

        Plaintiff,

v.

MEDEFIS, INC.,
a Delaware corporation,

        Defendant.
_____/

CASE NO. 1-24-cv-02061

**PLAINTIFF LENDR FINANCE LLC'S MOTION TO COMPEL DISCOVERY**

Plaintiff Lendr Finance, LLC's ("Lendr"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.2, hereby files this motion seeking an order compelling Defendant Medefis, Inc. ("Medefis") to provide full and complete responses to Lendr's First Request for Production to Medefis, Inc. ("Medefis") (the "Request for Production"), and in support, states the following:

**I.    Brief Background and Procedural History**

1. On February 13, 2024, Lendr filed its Complaint against Medefis alleging Medefis' breach of contract for failure and refusal to pay fifteen (15) Outstanding and Unpaid Accounts for services rendered by non-party Agape Nurse Healthcare LLC ("Agape") to Hospital Clients (defined in the contract between Medefis and Agape) for which Medefis accepted and agreed to be responsible for payment. *See* Compl. at ¶ 28-37. On August 28, 2024, Medefis answered the Complaint. *See* D.E. 25. Subsequently, written discovery commenced.

2. Lender is in the factoring business, which involves the purchasing of accounts and the receipt of an assignment and security interest in Accounts to secure the indebtedness. Agape

1

is Lendr's former client. Agape provided healthcare staffing solutions to various hospitals and facilities such as Northeast Georgia Health System and Ballad Health (i.e., a Hospital Client).

3. Medefis and Agape entered into an agreement in which Medefis asserted that it was responsible for the payment of services rendered by Medefis to Hospital Clients. The Medefis Vendor Agreement with Agape, attached as Exhibit A to the Complaint, provides, in relevant part, as follows:

> **WHEREAS**, Medefis operates a private website to manage the procurement of personnel using certain Medefis-proprietary software products (the "Products") through hosted environments (each a "Hosted Environment" and collectively "Hosted Environments"); and
>
> **WHEREAS**, Affiliate Vendor [Agape] desires to gain access to Medefis' Hosted Environments, to use the Products, and to participate as a Medefis affiliate vendor; . . .
>
> This license is personal to Affiliate Vendor. . .
>
> **VMS PROCESS.**
> a. Posting Open Assignments ("Posting"). Client has agreed to exclusively post certain staff-augmentation positions through the Medefis Hosted Environment for Medefis Affiliate Vendors to review. All postings will identify the Medefis Client's position requirements.
> b. Candidate Submission to Open Assignments ("Submissions"). After reviewing the Medefis Positions, Affiliate Vendor may submit qualified Affiliate Vendor Employees through the Medefis Hosted Environment for Medefis Client's consideration.
> c. Candidate Confirmation ("Confirmation"). Client may confirm its acceptance of Affiliate Vendor's submission, and Affiliate Vendor may confirm its candidate through the Medefis Hosted Environment.
> d. Retractions, Cancellations, Terminations. Affiliate Vendor may retract a submission through the Medefis Hosted Environment. Additionally, in the event that a Position cancelled or terminated, it is Affiliate Vendor's responsibility to update the Confirmation page on the Medefis Hosted Environment.
> **e. Communication with Client. Any and all communication from Affiliate Vendor with Medefis Client shall be conducted through**

> **the Medefis Hosted Environment email system unless otherwise requested, in writing, by the Medefis Client.**
> f. Timesheet and Billing process: The process for billing for Covered Services and managing timesheet requirements for Clients enrolled in the Medefis Consolidated billing process shall be governed in accordance with the terms and provisions set forth in the applicable client BSA agreement hereunder and, by reference, incorporated into and made a part hereof.

*See* D.E. 1-1, Ex. A, §§ Recitals, 1, 5 (emphasis added).

4. Pursuant to the Factoring Agreement between Lendr and Agape, on or about August 15, 2022, Lendr issued a Notice of Assignment to Medefis. The Notice of Assignment notified Medefis that (a) Agape had assigned Lendr all present and future Accounts; (b) Medefis could only discharge its obligation on the Accounts by directing all payments to Lendr; (c) Medefis's payment to any other party, including Agape, would not discharge its payment obligations under the Account. Medefis assented to the Notice of Assignment and paid Lendr on Accounts submitted by Agape to Medefis through the Portal.

5. Lendr contends that it was not paid for all services rendered.

6. On October 4, 2024, Lendr served its First Request for Production upon Medefis. On November 11, 2024, Medefis served Responses and Objections to the Request for Production. A true and correct copy of the Request for Production and Responses and Objections are attached hereto as **Exhibit A and B**, respectively.

7. On November 11, 2024, Medefis produced documents to Lendr bates stamped Medefis0000001-000378. The documents consisted of the following:

    a.    EFT receipts (1-33, 275-277);
    b.    A single page internal spreadsheet of invoices and EFTs (34);
    c.    The Complaint at Law filed by Lendr against Agape in Iowa and other Agape court filings (35-74);
    d.    The Vendor Agreement (which is attached to the Complaint in this action) (75-85);

    e.    EFT receipts followed by screenshots of the VMS Portal (example attached hereto as **Exhibit C**) (86-165);
    f.    Duplicate of an email string from April 2022 verifying the EFT information of Agape (166-177);
    g.    Email string from April 2022 regarding Medefis' receipt of the Notice of Assignment (178-187);
    h.    Emails with Lendr regarding outstanding payments commencing December 20, 2023 (188-274)
    i.    Screenshots of the VMS portal page for invoice search results (an example of which is attached hereto as **Exhibit D**) (278-352);
    j.    AP Transaction Report prepared by Medefis (353-355);
    k.    Payables Report prepared by Medefis (356-366)
    l.    A report referencing Agape (367);
    m.    A screenshot of an internal portal referencing Lendr (368)
    n.    The Notice of Assignment (369-370);
    o.    Agape's Vendor EFT Enrollment Form and application with Medefis (371-378).

8.    In response to the Requests for Production Medefis also identified that documents were being withheld on the basis of confidentiality. A Confidentiality Order was subsequently entered following a hearing with this Court, and on January 3, 2025, Medefis provided Lendr with previously produced EFTs and ACH documents without redaction.

9.    On January 24, 2025, counsel for Lendr attempted to confer in good faith with counsel for Medefis in order to avoid filing the instant Motion to Compel on several issues relating to Medefis' response to the Request for Production. A true and correct copy of the good faith conferral letter is attached hereto as **Exhibit E**.

10.    On January 30, 2025, counsel for Medefis and counsel for Lendr conducted a telephonic call to address a number of outstanding discovery issues including the January 24, 2025, letter. During the meet and confer call, counsel for Medefis advised that he had put a request out to his client for communications and would advise if there were any communications which may be produced.

11. As of the date of this Motion, no additional documents have been produced by Medefis despite repeated requests.

12. For the reasons explained in greater detail below, Lendr respectfully requests that this Court enter an order: (a) overruling Medefis' improper objections; (b) compelling Medefis to provide full and complete responses to Lendr's Discovery Requests, namely Request Nos. 1, 5, 9-16, and 19, which encompass: (i) Documents[1] reflecting the exchange of money between Medefis and the Hospital Client(s) for which Agape provided service, (ii) all Communications (both internal and with third-parties such as Hospital Clients, Agape, or Lendr) regarding or otherwise relating to Agape and/or Lendr (no communications have been produced for the time period in which Agape was providing services to Hospital Clients for which Medefis was responsible for payment), and (iii) internal policies and procedures for processing invoices; and (c) awarding Lendr its reasonable fees and costs in connection with the relief sought herein.

I. **Standard for Compelling Production, Generally**

Parties may "obtain discovery regarding any matter that is relevant to any party's claim or defenses and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1); *see also Monier v. Chamberlain*, 31 Ill. 2d 400, 403, 202 N.E. 2d 15 (1964) (recognizing that the "scope of information considered relevant can be broad, including both evidence that would be admissible at trial and information leading to the discovery of admissible evidence.").

If such discovery is not provided or there is a refusal to answer by a party whom the request is issued to, the requesting party, upon reasonable notice to other parties, and all persons affected, may move for an order compelling disclosure of discovery. *See Meyer v. S. Pac. Lines*, 199 F.R.D. 610 (N.D. Ill. 2001) (holding that " a party may file a motion to compel discovery under [FRCP]

---

[1] The terms "Documents," "ESI," "Communications" and any other capitalized term not specifically defined herein shall have such meaning as assigned to the term in the Request for Production.

Rule 37 where another party files to respond to a discovery request, or where the party's response is evasive or incomplete."); *see also Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158 (N.D. Ill. 2017) (Holding that the party objecting to discovery bears the burden to show the requested discovery is improper).

Medefis' failure to comply with its obligations and to produce the documents sought by Lendr defeats the purpose of discovery even if their failure has not been completely willful. *See Morgan v. Union Pac. R.R.*, 182 F.R.D. 261, 263 (N.D. Ill. 1998) (Ruling that the "Federal Rules of Civil Procedure established a broad policy which favors full disclosure of facts during discovery… [and] the law disfavors privileges because privileges interfere with the fundamental goals of the judicial process… namely, revealing the truth about the incidence, and … providing a remedy.")*; see also Illinois Tool Works, Inc. v. Metro Mark Prods, Ltd.*, 43 F. Supp. 2d 951 (N.D. Ill. 1999) (where the court found that defendants had engaged in conduct sanctionable under Fed. R. Civ. P 37(a) by frustrating legitimate discovery, granting the plaintiff's motion for sanctions and awarding reasonable fees and costs incurred by the defendant's failure to comply.).

If the Court grants this Motion, the Court must require the party whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in the making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5); *see also BookXchange FL, LLC v. Book Runners, LLC*, 2020 WL 8674189, at *3 (N.D. Ill. 2020) ("[The moving party] should not have had to incur the expense of this motion to gain [the objecting party's] compliance with its discovery obligations.").

II. **Medefis' Improper General Objections Must Be Overruled**

An overarching issue with Medefis' responses to the discovery requests are overbroad, general, unsubstantiated objections which seek to narrow the scope of these proceedings, ignoring the plain language of the claims and defenses that have been asserted by the parties, as well as the plain language of the narrowly tailored requests. Each of these objections should be overruled and,

since Medefis has relied on these objections to narrow the scope of the Requests, the Documents and/or ESI that has been withheld should be ordered to be produced to Lendr.

As aptly noted by the Seventh Circuit, under the Federal Rules, an evasive discovery response is no response at all. *Dotson v. Bravo*, 321 F.3d 663, 666 (7th Cir. 2003) (citing Fed. R. Civ. P. 37(a)(4)). Boilerplate, unexplained objections are tantamount to no objections at all and are entitled to no weight. *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C _166, 2023 WL 2429010, at *3 (N.D. Ill. Mar. 9, 2023) (collecting cases); *Vera Bradley Designs, Inc. v. Aixin Li,* 2021 WL 1088323, at *3 (N.D. Ill. Mar. 22, 2021) ("Court after court has rejected [ ] unadorned boilerplate 'objections' as tantamount to no objections at all.").

The burden rests upon the party objecting to a discovery request to show why a particular request is improper. *Kodash v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). This burden "is not satisfied by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Yahnke v. County of Kane*, 2013 U.S. Dist. LEXIS 121573, * 5 (N.D. Ill. 2013). An order to compel is justified when "a party fails to answer an interrogatory submitted under Rule 33" or when "a party fails to produce documents ... under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii-iv).

First, at the outset of its Response, Medefis lodges a general objection, stating it "objects to the definitions and instructions contained in the First Request for Production of Documents to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure." However, Medefis fails to specify which, if any, of the 16 defined terms or 5 instructions exceed the scope of discovery permitted under the Federal Rules. It does not indicate any inability to comprehend a definition or instruction, nor does it explain how this objection has

7

prevented it from producing responsive documents. This vague and unsupported objection is a textbook example of an improper boilerplate objection and should be overruled.

Second, in response to Request Nos. 1-4, Medefis objects on the grounds that the terms "contracts" and "memoranda" are vague, ambiguous, and confusing as to how they could reflect transfers of value to Agape. This objection is meritless and boilerplate. A contract reflects a transfer of value when it establishes an obligation for one party to pay another. A memorandum reflects a transfer of value when it documents the transmission of funds from one entity to another. The requests are narrowly tailored to determine whether Agape provided services, whether Agape sought payment for those services, whether the Hospital Client paid Medefis for the services with the expectation that Medefis would compensate Agape, and whether Medefis later reduced or denied payment based on an undisclosed technicality. Medefis' objection is improper and obstructs relevant discovery. The requested documents are essential to assessing the flow of payments and the legitimacy of Medefis's handling of Agape's compensation. Accordingly, Medefis should be compelled to produce responsive documents without further delay.

Third, Medefis objects to Request Nos. 10, 11, and 19 with the same generic boilerplate objection, claiming the requests are "overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighing its likely benefit. . . ." However, Medefis fails to provide any specific explanation as to why these requests allegedly impose an undue burden or how they are disproportionate under Rule 26(b)(1). Request No. 10 seeks documents and electronically stored information, including communications between Medefis and any person regarding or relating to

8

Agape. Similarly, Request No. 11 seeks documents and communications regarding or relating to Lendr. Request No. 19 seeks Medefis' internal policies and procedures. Each of these requests is directly relevant to the claims and defenses in this case, particularly as they pertain to Medefis' dealings with Agape and Lendr and its internal policies governing such transactions. Request Nos. 10 and 11 are essentially the inverse of the very records that Medefis sought from Lendr and sought an Order from this Court to produce.

Medefis' objections are improper and obstructive. It does not identify any specific burden, nor does it justify withholding these documents, which are critical to understanding Medefis' role in the alleged conduct. Without these documents, Lendr is unable to assess key issues related to Medefis' decision-making and payment processes. Medefis failed to articulate the number of servers, email accounts, man hours, or files that would be required to search for relevant information, and contends that, as a "national company" its resources should be taken into consideration. This Court should take into consideration Medefis' resources and the fact that it likely has an internal IT department that can search servers and emails for responsive documents. However, more importantly, this objection flies in the face of Medefis' contract with Agape that required all exchanges between Agape and Medefis to occur in a portal, which would be a central and easily searchable location for highly relevant documents. Accordingly, Medefis should be compelled to produce the requested documents without further delay.

Lastly, in response to Request Nos. 10 and 11 Medefis improperly narrows the scope of the Requests and unilaterally determined that it would only produce documents "operating on the basis that this request is not asking for documents involving Medefis' in-house or outside attorneys." Fed. R. Civ. P. 26(b) required Medefis to expressly make the claim of privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Medefis

9

failed to assert an objection, did not identify any communications or other documents that were being withheld on a privilege log, and should be deemed to have waived any right to do so. *See e.g.*, *Hobley v. Burge*, No. 03 C 3678, 2004 U.S. Dist. LEXIS 14323 (N.D. Ill. July 23, 2004); *Bresnahan v. City of Chi.*, No. 18 C 1974, 2020 U.S. Dist. LEXIS 132990 (N.D. Ill. July 28, 2020); *see also Schuler v. Invensys Bldg. Sys.*, No. 07 C 50085, 2009 U.S. Dist. LEXIS 13067 (N.D. Ill. Feb. 20, 2009) (business advice from in house counsel is not privileged). A copy of Medefis' Privilege Log is attached as **Exhibit F**. This Court should find that it waived any right to assert or limit the Requests on the basis of a privilege and should compel the turnover of all responsive records.

### III. Medefis Should be Compelled to Produce Documents Relevant to this Action

Upon overruling the objections, per Lendr's request in Section II, above, the Court should find that Medefis' responses to these Requests were insufficient and should compel Medefis to produce all requested records.

First, in Requests 1-4, Lendr has sought Documents and/or ESI relating to the transfer of value between Medefis, Agape, Lendr, and/or persons relating to services provided by Agape to Hospital Clients for which payment was sought by Agape from Medefis. This information is directly relevant to the issues in this case, yet, Medefis objected to this request on the basis of the request being overly broad; failing to articulate how.. In particular, as to Request one, Medefis interprets the request to be the transfer of money and then proceeds to state that it has no documents reflecting the transfer of money between Medefis and Agape. However, the transfer of value may include canceling a debt or extending credit as a form of consideration, not simply the exchange of money for services rendered. As to Requests 2-4, Medefis limited its interpretation of the Requests to only those records evidencing payment of money by Medefis to Lendr or a third-party

10

on the Outstanding and Unpaid Accounts which are those Accounts referenced in the Complaint. However, the Requests specifically sought any documents *relating to* the transfer of value, which would include Medefis' requests for payments to the Hospital Clients (as Medefis is just the intermediary), Communications regarding payments, notations, accounting records, and emails. So records have been produced and this Court should compel the production of same.

Second, in response to Request No. 5, Medefis shockingly states "None" when asked to produce "all invoices and/or other Accounts issued or submitted by Agape to [Medefis] for services provided by Agape between January 1, 2022 and the date of Your Response to this Request for Production." The term "Account" was defined in the Request for Production and is consistent with the definition set forth in Article 9 of the UCC: "'Accounts' shall have the same meaning as given to the term as in the Uniform Commercial Code § 9.102(2): 'a right to payment of a monetary obligation, whether or not earned by performance . . . for property that has been or is to be sold . . ., for services rendered. . . .'" Accounts take many forms. Lendr recognizes that an invoice is a specific type of document that is often used to reflect the provision of goods or services and the request for payment and that such a document may not have been used in this case because Agape sent requests for payments to Medefis through the VMS Portal. But, again, Accounts take many forms including bills or accounts receivable. Exhibit A to the Vendor Agreement is the ***billing*** procedure for the submission of ***bills*** (i.e., Accounts) by the Vendor (Agape) to Medefis. In this case, the Accounts may not have been evidenced by an invoice, but they were evidenced by the submission of bills and Lendr has requested that those documents be produced. Instead, Medefis has shockingly answered "None" and produced no documents to Lendr. Similarly, in response to Request No. 9, Medefis claim that it has no documents "regarding or relating to Agape and the services provided by Agape as reflected on any Accounts submitted by Agape to You for payment."

Medefis has produced documents evidencing the submission of bills by Agape and the transmission of money by Medefis to Agape. Its narrow interpretation of these Requests seeks only to withhold documents and engaged in gamesmanship. The Court should compel Medefis to produce documents responsive to these Requests.

Furthermore, as to Request Nos. 5, 9, 10-16, in particular, the communications in the VMS Portal, pursuant to the Vendor Agreement, all Communications by Agape with the Hospital Clients were to occur in the VMS Portal. As the court can see in Exhibit C, there is a darkened comment bubble next to entries in the portal. Lendr has reason to believe that there is commentary associated with these darkened boxes, yet, none of these comments have been produced. In fact, no communications in the portal have been produced. Likewise, no email communications between Lendr, Agape, Medefis, and/or the Hospital Clients have been produced by Medefis during the course of Agape's provision of services to the Hospital Clients (May 2022-December 2023).[2]

Lendr specifically requested Documents and ESI relating to Communications that specifically reference Agape and/or Lendr. This information is directly relevant to the issue being litigated and was requested through Request Nos. 10 and 11. Medefis again objected to these requests on the basis of the requests being overly broad. Interestingly, Medefis made the same request on Lendr, seeking an order from this Court of all communications between Lendr and Agape but has not made the reciprocal production of communications between itself and Agape or itself and Lendr between the period of April 2022 and December 2023. *See United States v. Navistar Int'l Corp.*, 236 F. Supp. 3d 1049 (N.D. Ill. 2017) (holding that "materials are relevant for purposes of discovery if they "appear reasonably calculated to lead to the discovery of

---

[2] It should also go without saying that Medefis has control over the Hospital Clients as it has a contractual relationship with its clients and yet it has not produced any of the Hospital Clients (in particular, Northeast's) records relating to Agape which would include timecards and other records of the services performed by Agape.

12

admissible evidence.'"") (quoting *Jenkins v. White Castle Mgmt Co.*, 2014 U.S. Dist. LEXIS 106100 (N.D. Il. Aug. 4, 2014); *see also Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158 (N.D. Ill. 2017); *Square D Co. v. E.l. Elecs., Inc.*, 264 F.R.D. 385 (N.D. Ill. 2009).

Third, Lendr requested Medefis' internal policies and procedures for processing invoices submitted by Agape. This was requested through Request No. 19. Medefis, once again objected on the undefined basis of the request being overbroad and vague, among other things. Such records are directly related to the question of the matter at hand, in particular Medefis' denial of the allegations in the Complaint. *See Bradway v. America Nat'l Red Cross*, 132 F.R.D 78 (N.D. Ga. 1990) (finding that a company's internal policy and procedures are within the scope of discovery when they are similar to business records typically requested during discovery); *see also EEOC v. Brinker Int'l Payroll Co.*, L.P., 348 F.R.D. 88 (E.D. Ark. 2024) (where the Court in granting a motion to compel found that in construing relevance broadly, the defendant's policy manual was relevant because it included policies and procedures directly related to the matter being litigated); *see also Baxter Int'l, Inc., v. AXA Versicherung*, 320 F.R.D, 158 (N.D. 2017).

Request Nos. 7, 8, 9, and 12 sought Communications relating to the Notice of Assignment, Outstanding and Unpaid Accounts, services rendered by Agape, and demands for payment made by Agape and/or Medefis. While Medefis produced multiple documents and emails, they failed to produce any internal communications that would be responsive to these requests. In fact, Medefis points Lendr to several documents that are wholly unresponsive to these requests. *See Patrick v. Teays Valley Trs.*, LLC, 297 F.R.D. 248 (N.D.W. Va. 2013) (Granting a motion to compel the production of communications between the plaintiffs, defendants, and third parties because the communication was likely to lead to the discovery of admissible evidence, which made them relevant and discoverable).

13

Moreover, Medefis responded to Lendr's Requests for Production Nos. 5, 9, 12, 13, 14, 15, and 16 stating that they had no records relating to the requested matter. Lendr finds it near impossible that no such responsive documents exist in reference to these requests. For instance, Request Nos. 5 and 9 sought to discover invoices and/or other Accounts issued by Agape to Medefis for services rendered by Agape and all communications regarding these services as reflected on any Accounts submitted by Agape. As there is presently no dispute in this action that Agape was to submit invoices through a portal maintained by Medefis and that Medefis is responsible for payment, it would appear impossible that Medefis is not in receipt and possession of such invoices and/or other Accounts. As to Request No. 9, there is no dispute that Medefis and Agape entered into a contract with one another. In fact, Lendr has produced communications by Agape to Medefis requesting information on outstanding accounts and the status of payments.

Similarly, Request Nos. 12, 13, 14, and 15 sought documents in which Medefis communicated and/or received an objection and/or demand for payment to any services and Accounts issued by Agape to Medefis. Request No. 16 also sought documents relating to any amount that Medefis determined to be due and owing for services rendered by Agape to Medefis. Again Medefis stated that they possessed no responsive materials to these Requests. It seems near impossible that Medefis would possess not a single responsive document to these requests when each is tailored specifically to the central disputed issue of Accounts of which is being litigated over.

## IV. Conclusion

The documents produced by Medefis have been deficient and Medefis continues to frustrate the discovery process with unfounded objections and insufficient answers to Lendr's Request for Production. Lendr has made numerous good faith efforts to obtain the documents

without Court intervention and has been repeatedly ignored, forcing Lendr to spend otherwise unnecessary time and money attempting to obtain discovery that Medefis is obligated to provide and that Lendr itself has provided upon request and Motion by Medefis. Accordingly, Medefis' objections to Request Nos. 1, 5, 9-16, and 19 should be overruled and to the extent that Medefis has withheld any records based on these objections, Medefis should be compelled to produce them.

**WHEREFORE**, Plaintiff Lendr Finance, LLC respectfully requests that this Court enter an Order (1) granting this Motion; (2) compelling Medefis Inc. to provide full and complete responses to the Request for Production Nos. 1, 5, 9-16, and 19 within ten (10) days of the date of the Order; (3) overruling all objections; (4) awarding Lendr its attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(a)(5); and (5) awarding such other relief as this Court deems just and proper.

Date: February 26, 2025

Respectfully submitted,

By: */s/ Jocelyne A. Macelloni*
    Jocelyne A. Macelloni *(pro hac vice)*
    Barakat +Bossa, PLLC
    201 Alhambra Circle, Suite 1060
    Coral Gables. Florida 33134
    (305) 444-3114
    (305) 444-3115 (fax)
    Florida Bar No. 92092
    jmacelloni@b2b.legal
    service@b2b.legal
        -and-

By: */s/ Christen McGlynn*
    Gary Vist
    Christen McGlynn
    Masuda, Funai, Eifert & Mitchell, Ltd.
    203 N. LaSalle Street, Suite 2500
    Chicago, Illinois 60601
    (312) 245-7500
    (312) 245-7467
    gvist@masudafounai.com
    cmcglynn@masudafunai.com
    **COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 26, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on all counsel or parties of record on the Service List below.

| | |
|---|---|
| Stephanie A. Scharf, Esq. <br> George D. Sax, Esq. <br> SCHARF BANKS MARMOR LLC <br> *Counsel for the Defendant* <br> 30 West Hubbard Street, Suite 500 <br> Chicago, Illinois 60654 <br> Telephone: (312) 726-6000 <br> sscharf@scharfbanks.com <br> gsax@scharfbanks.com | Brian L. Lerner, Esq. <br> KIM VAUGHAN LERNER LLP <br> *Counsel for the Defendant* <br> 312 SE 17th Street, Suite 300 <br> Fort Lauderdale, Florida 33316 <br> Telephone: (954) 527-1115 <br> Facsimile: (954) 527-1116 <br> blerner@kvllaw.com <br> *(pro hac vice)* |

                                                    */s/ Christen McGlynn*